**ams**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DEBRA K. NEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-4059-JAR |
| | ) | |
| CITY OF HOISINGTON, KANSAS, | ) | |
| HOISINGTON POLICE DEPT., KENTON | ) | |
| DOZE, and ALLEN DINKEL, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Debra Ney filed this action against her former employer, the City of Hoisington, Kansas and the Hoisington Police Department, along with her former supervisors, Kenton Doze and Allen Dinkel. Plaintiff asserts that she was unlawfully terminated from her position as a records clerk in retaliation for (1) exercising her rights under the Family Medical Leave Act ("FMLA"), and (2) whistleblowing under Kansas law. Plaintiff additionally alleges claims under 42 U.S.C. § 1983 based on violations of (1) equal protection, (2) procedural due process, and (3) substantive due process. Finally, plaintiff alleges a defamation claim under Kansas law. The Court now considers defendants' Motion for Summary Judgment (Doc. 66) on all claims. As explained more fully below, the Court grants defendants' motion on the federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  When examining the

---

[1]Fed. R. Civ. P. 56(c).

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3]*Id.*

[4]*Id.* at 251–52.

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[7]*Id.*

[8]*Id.*

underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[9]

## II.  Uncontroverted Facts

### A.  *Evidentiary Issues*

There are technical and evidentiary issues the Court must resolve before determining the material uncontroverted facts in this matter.  In their reply memorandum, defendants object to (1) plaintiff's method of responding to defendants' statement of uncontroverted facts, and (2) plaintiff's reliance on her own affidavit for almost all facts recited in the response memorandum.[10]

In the initial summary judgment memorandum, defendants set forth in paragraph format their statement of uncontroverted facts and provide the Court with a specific citation to the record for each fact, in compliance with D. Kan. R. 56.1.  In her response, plaintiff chose to controvert many of these statements of fact but failed to include any citations to the summary judgment record in support.  After addressing many, but not all, of defendants' statements of fact, plaintiff then states that she "incorporates by reference herein, the uncontroverted facts set forth in her affidavit attached to this motion as Exhibit B."[11]  Defendants object that plaintiff's affidavit does not meet the personal knowledge requirement of Fed. R. Civ. P. 56 and should be disregarded.

---

[9]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[10]The only other exhibit attached to the response brief is a letter from Allen Dinkel to plaintiff dated January 16, 2003.  The Court is unable to locate a factual statement that cites to this exhibit.

[11](Doc. 74 at 20.)

The Court first admonishes plaintiff's counsel for failing to comply with the local rule for summary judgment responses, which requires:

> (1) . . . [A] section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, *shall refer <u>with particularity</u> to those portions of the record upon which the opposing party relies*, and, if applicable, shall state the number of movant's fact that is disputed.
> (2) if the party opposing summary judgment relies on any facts not contained in the movant's memorandum, that party shall *set forth each additional fact in a separately numbered paragraph, <u>supported by references to the record</u>, in the manner required by subsection (a), above*.[12]

Plaintiff spends eighty-six paragraphs of her response purporting to controvert defendants' statement of uncontroverted facts without any citation to the summary judgment record. The Tenth Circuit has held that merely placing evidence in the record on summary judgment without pointing the Court to it is insufficient: "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct it's own search of the record."[13] This Court declines to conduct a fishing expedition through the thirteen pages of statements in plaintiff's affidavit to support the assertions made in her responses to defendants' statement of uncontrovered facts or any additional statement of uncontroverted fact. In line with D. Kan. R. 56.1, the Court will deem admitted for the purpose of summary judgment all facts that are not controverted by a readily identifiable portion of the record.

The Court next turns to the admissibility of plaintiff's affidavit, attached to her response

---

[12]D. Kan. R. 56.1(b) (emphasis added).

[13]*Cross v. Home Depot*, 390 F.3d 1283, 1290 (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)).

4

as Exhibit B.  Fed. R. Evid. 602 requires that a testifying witness "ha[ve] personal knowledge of the matter" testified to.[14]  Also, Fed. R. Civ. P. 56(e) requires that affidavits be made on personal knowledge and "set forth such facts as would be admissible in evidence . . . .  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."  "Under the personal knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.'"[15]  Statements of "mere belief in an affidavit must be disregarded."[16]

Plaintiff's affidavit includes immaterial information, recitation of facts that she could not have actually perceived or observed, conclusory allegations, and hearsay.  Some examples include plaintiff's attempts to assert the subjective thoughts of others as fact,[17] assertions of others' suspected motives as fact,[18] hearsay statements of other employees or of her supervisors,[19] and assertions about the actions of others for which there is no indication that plaintiff actually perceived or observed.[20]  The Court will disregard all statements in plaintiff's response that are not supported by other portions of the record, or that could not represent information based on plaintiff's personal knowledge.  The Court will only consider, for purposes of determining the uncontroverted evidence, those statements that plaintiff could have perceived

---

[14]Fed. R. Evid. 602.

[15]*Argo v. Blue Cross Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

[16]*Id.* (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

[17](Doc. 74, Ex. B ¶¶ 25–26, 36, 61, 93.)

[18](*Id.* ¶¶  8, 29, 34, 95.)

[19](*Id.* ¶¶  38, 44, 98–100.)

[20](*Id.* ¶¶ 50, 54, 63, 71, 92, 96, 97.)

5

or observed, and will construe the evidence in the light most favorable to plaintiff as the non-moving party.

### B. Undisputed Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff.  Plaintiff began working for the City of Hoisington ("City") in 1983.  Two days a week she worked as a records clerk for the Hoisington Police Department and three days a week she functioned as the clerk of the City's municipal court.  Plaintiff never signed an employment contract with the City.  The Personnel Policies and Guidelines for the City ("Employee Manual") provides that it does not create contractual employment rights and that "[a]ll employees are considered to be at-will employees for the purposes of City employment."[21] Nevertheless, former City Attorney Richard Boeckman and former City Manager Mary Jo Ray had told plaintiff that she was a "permanent employee."

In 1998, a co-worker of plaintiff found pornography on a computer that had previously been used by Chief of Police Phil Taylor and showed the pornography to plaintiff.  Plaintiff reported this to Dan Simpson of the Barton County Sheriff's Department on April 27, 1998.  Phil Taylor was suspended on April 27, 1998 pending an investigation into the matter and his employment was terminated by the City on November 2, 1998, which was the day he was arraigned on charges related to the pornography.  Kenton Doze was made acting Chief of Police for a time after Taylor was suspended and then Jon Quinday was made Chief of Police.  Subsequently, in 2000, Kenton Doze was made Chief of Police.

In 1999, plaintiff required a seven-month leave of absence from her job for medical

---

[21](Doc. 67, Dinkel Aff. Ex. B.)

reasons.  Because of plaintiff's long employment history with the City, she desired to take this time as paid leave, as she had accumulated enough vacation and sick leave to do so.  Plaintiff asserts that Dr. Robert Frayser and Dr. Eldean Kohrs "certified her as unable to work because of a serious medical condition."  But plaintiff declined to complete FMLA paperwork provided to her by the City because she was told that if she did take her leave under the FMLA, she could not opt to take advantage of her accrued vacation and sick leave.  Plaintiff did not understand the FMLA forms sent to her during that time period due to the medications she was taking; therefore, plaintiff retained attorney Donald E. Reif, Jr. to assist her in obtaining her accrued paid leave.  On August 12, 1999, Reif sent Chief Quinday a letter that states in relevant part:

> For your information, the Family Medical Leave Act of 1993 does not apply in this case.  The [FMLA] would require the City of Hoisington to allow Ms. Ney to take up to 12 weeks of unpaid leave if she didn't have any earned sick leave and needed or wanted time off for one of [the] reasons allowed by the federal law.  The [FMLA] has absolutely nothing to do with Ms. Ney's situation and the employee has to request the time off through the Act, which Ms. Ney did not do and didn't need to do.  Ms. Ney is taking sick leave through her accumulated sick leave she earned as a job benefit from 16 years of service to the City of Hoisington. . . .
>
> Ms. Ney chose to use her paid sick leave and accrued vacation and not take time off pursuant to the [FMLA]; therefore, the Act does not apply.[22]

Allen Dinkel was hired by the City as City Manager in 1999, shortly before plaintiff returned from her seven-month leave.  In his capacity as City Manager, Dinkel hires and supervises all city employees.  "Only the City Manager may suspend, demote, reduce salary or terminate an employee.  Such actions may be taken by the City Manager with or without the

---

[22](Doc. 67, Ney Dep. Ex. 1 at 2.)

recommendation of the department head."[23]  In 2000, Doze was made Chief of Police.

When plaintiff returned from her leave period in 1999, she found that she had been locked out of her office building due to the locks being changed, her workspace had been moved to a small workspace that plaintiff describes as a "closet," which had a built-in shelf as a desk that was too tall for her.  Also, when Chief Doze became police chief, he changed plaintiff's schedule and required her to work two nights a week, rather than the day shifts  on Monday through Friday.  As a result of her schedule changes, plaintiff was required to work overtime, without being paid overtime wages.  Plaintiff describes harassment by Dinkel and Chief Doze when she returned from her medical leave, specifically, that she was "yelled to, accused of things and berated for hours on a fairly regular basis.  Most of the time I was called over to talk about political things like my views on an ordinance about large dogs."[24]  Finally, plaintiff was given a "huge amount of work that was impossible to complete and [she] was constantly told to redo or do things differently in a way that was irrational and confused [her]."[25]

In the early part of 2003, Dinkel asked to have a meeting with plaintiff in his office.  At this time, plaintiff informed Dinkel and Doze that her physician, Dr. Kohrs, had instructed her to have him or her husband present at any meetings with either of them.  This was because plaintiff felt she had been harassed by the two of them in the past when she had met with them alone. Plaintiff asserted that this was a necessary accommodation because she suffered from a disability. According to Dr. Kohrs, this recommendation was for plaintiff's "legal protection" and for "emotional support."  Dr. Kohrs wrote a letter to Dinkel requesting that plaintiff not be

---

[23](Doc. 67, City Discipline Policy, Dinkel Aff. Ex. A.)

[24](Doc. 74, Ex. B ¶ 19.)

[25](Doc. 74, Ex. B ¶ 33.)

8

harassed, but did not indicate that she was disabled.  Dinkel ultimately permitted plaintiff's husband to attend the meeting on the condition that he not speak, but only observe.  Mr. Ney refused to agree to that condition and injected his opinions into the conversation.

On May 8, 2003, Dinkel asked Chief Doze to bring plaintiff to his office for a meeting.  Plaintiff refused to meet with them unless her husband or Dr. Kohrs could be present.  Then, on May 12, 2003, Chief Doze again requested plaintiff to come into a meeting with himself and Dinkel.  She told him that she could not get a hold of her husband or her doctor at that time, and again refused.  Dinkel made the decision to terminate plaintiff's employment due to insubordination.  After her termination, plaintiff requested and was granted a hearing before the City Council regarding her termination.  At the hearing, plaintiff was not allowed to speak, nor allowed to present evidence on her own behalf.  The City Council upheld Dinkel's decision to terminate plaintiff.

### III.  Discussion

#### A.  *FMLA Retaliation*

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: [including] [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[26]  To verify entitlement to FMLA leave, the employer may require certification by a health care provider.[27]  Specifically, the FMLA provides that "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care

---

[26] 29 U.S.C. § 2612(a)(1)(D).

[27] *Id.* §§ 2613(a), 2614(c)(3)(A).

provider of the eligible employee,"[28] and that "the employee shall provide, in a timely manner, a copy of such certification to the employer."[29]  Specifically, the Department of Labor regulations explain that "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts."[30]  "If the employee never produces the certification, the leave is not FMLA leave."[31]  If an employer requests such documentation, it is required to notify the employee of the consequences for failing to provide an adequate certification.[32]

Plaintiff's first claim set forth in the Pretrial Order is FMLA retaliation.  When analyzing FMLA retaliation claims under 29 U.S.C. § 2615(a)(2), the Court applies the *McDonnell-Douglas* burden-shifting scheme.[33]  Under that approach, a plaintiff's establishment of a *prima facie* case creates a presumption of retaliation.[34]  The burden then shifts to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.[35]  If the defendant meets this burden, the burden shifts back to the

---

[28]*Id.*  § 2613(a).

[29]*Id.* § 2613(a).

[30]29 C.F.R. § 825.305(b) (2003).

[31]*Id.* § 825.311(b).

[32]*Id.* § 825.301(b)(1)(ii).

[33]*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also  Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[34]*See, e.g.*, *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).

[35]*See id.*

plaintiff to present evidence that the proffered reason was not the true reason for the employment decision.[36]  In order to establish a *prima facie* case of FMLA retaliation, plaintiff must demonstrate that (1) she engaged in protected activity; (2) defendants took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.[37]

### 1. Protected Activity

The parties dispute what is required for a plaintiff to meet her burden of establishing the first element of the *prima facie* case.  Plaintiff argues that she was not required to actually take FMLA leave to avail herself of a protected right; but rather, only needed to qualify for FMLA leave.  Plaintiff also contends that the City would have forced her to take unpaid leave had she formally requested leave under the FMLA.[38]  Defendants respond that they complied with the City's policy and sent plaintiff notice of her rights under the FMLA when she requested medical leave in 1999.[39]  Defendants also disagree with plaintiff's legal interpretation of what is required to meet the first element of this claim.  They maintain that in arguing that qualifying leave is

---

[36]*Id.*

[37]*Id.*  The Tenth Circuit has applied the Supreme Court's formulation of the second prong of the prima facie case of retaliation in Title VII cases to FMLA retaliation cases, which now only requires that a reasonable employee would have found the challenged action materially adverse.  *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1202 n.2 (10th Cir. 2006) (discussing and quoting *Burlington N. & Santa Fe R.y. Co. v. White*, –U.S.–, 126 S. Ct. 2405 (2006)).

[38]Plaintiff also makes the argument that she took FMLA leave in May 2003.  Both parties submit documentation about this leave request.  *See* Doc. 74, Ex. A.  The Court fails to see how this is material to the claim asserted in the Pretrial Order.  There, plaintiff asserts that "in April 1999, plaintiff took seven months of FMLA leave.  Plaintiff's termination was in retaliation for exercising this right under the FMLA."  (Doc. 65 at 4.)  The Pretrial Order "'measures the dimensions of the lawsuit,' and 'control[s] the subsequent course of the action unless modified by a subsequent order.'"  *Shaub v. Newton Wall Co/UCAC*, 153 Fed. App'x 461, 464 (10th Cir. 2005) (quoting *Hullman v. Bd. of Trustees off Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991; Fed. R. Civ. P. 16(e)).

[39]Although both parties submit deposition testimony relevant to the question of the paperwork involved in this claim, aside from the letter from Reif, there is no documentation in the record of the paperwork that the parties refer to in that testimony.

11

sufficient, plaintiff conflates her FMLA retaliation claim with a FMLA interference claim, which contains different elements of the *prima facie* case.

Under the first element of a retaliation claim, plaintiff had to submit a request for FMLA leave to the City in order to avail herself of FMLA protection.[40]  Not only did plaintiff fail to fill out this paperwork, her attorney wrote a letter specifically stating that the FMLA did not apply to her situation and that instead, she would be taking sick leave and vacation time.  The FMLA provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee . . . for any part of the 12-week period. . . ."[41]  It is undisputed that Reif was mistaken when he wrote to the City arguing that the FMLA did not apply and by insisting that the plaintiff's use of sick leave and vacation time was mutually exclusive of FMLA leave.  Despite the mistake by plaintiff's attorney, this Court is unable to find that a genuine issue of material fact exists with regard to the first element of plaintiff's *prima facie* case.  The case law and pertinent regulations make clear that in order for a plaintiff to "avail" herself of the FMLA, she must fill out the appropriate paperwork and actually elect to take such leave.  It is undisputed that plaintiff failed to do so here.

The Court agrees with defendants that merely qualifying for leave is insufficient under the first prong of the *prima facie* test.  All of the cases cited by plaintiff pertain to FMLA

---

[40]*See Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (plaintiff's failure to submit the requested medical certification was fatal to her ability to prove she availed herself of a protected right and, therefore, fatal to her *prima facie* case); *Neide v. Grand Court Lifestyles, Inc.*, 38 F. Supp. 2d 938, 950 n.12, 951 (D. Kan. 1999) (where the record evidence shows that plaintiff failed to submit the necessary FMLA paperwork, plaintiff did not avail himself of a protected right and cannot establish a *prima facie* case for retaliation).  It is unclear whether the City requested a certification from her doctor, but it is undisputed that no certification was provided.

[41]29 U.S.C. § 2612(d)(2)(A).

interference claims,[42] or to the issue of whether a plaintiff provided sufficient notice to an

employer that he or she was taking FMLA leave.[43]  Neither line of cases applies here.  Plaintiff

does not assert an interference claim in the Pretrial Order and she does not appear to challenge

the fact that defendant attempted to provide her with the ability to avail herself of the protections

of the FMLA.  As such, the Court finds that plaintiff is unable to establish a *prima facie* case of

FMLA retaliation because there is no genuine issue of material fact that she failed take FMLA

leave in April 1999.  No reasonable jury could find otherwise.

### 2.  Causation

Defendants also argue that plaintiff fails to meet the third prong of the *prima facie* case

because of the lack of temporal proximity between her FMLA leave and her termination.

Plaintiff may demonstrate a causal connection between the protected activity and her termination

"by evidence of circumstances that justify an inference of retaliatory motive, such as protected

conduct closely followed by adverse action."[44]

> We have held that "unless the [adverse action] is very closely
> connected in time to the protected activity, the plaintiff must rely
> on additional evidence beyond mere temporal proximity to
> establish causation." A six-week period between protected activity
> and adverse action may be sufficient, standing alone, to show

---

[42]In an FMLA interference action, the plaintiff only need prove that he or she was entitled to FMLA leave to establish a prima facie case.  *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005); *see also Metzler*, 464 F.3d at 1170 ("This circuit has recognized two theories of recovery under § 2615(a): an entitlement or interference theory . . . , and a retaliation theory . . . . The distinction between these two theories is important because the elements and burdens of proof that apply . . . differ.").  In *Jones*, it was unclear whether the plaintiff was also asserting a retaliation claim and the court stated in a footnote that even if he did assert a retaliation claim, the same facts support the conclusion that the first prong was not met under either type of claim.  *Id.* at 1323 n.2.

[43]*Tate v. Farmland Indus.*, 268 F.3d 989, 997 (10th Cir. 2001).  The FMLA regulations on notice only require the employer to notify an employee that FMLA coverage may apply when it is on notice that the employee *might* qualify for benefits.  29 C.F.R. § 825.302(c); 825.208(a).  Here, there is no dispute that the City provided this notice to plaintiff and that she explicitly declined to take leave pursuant to the FMLA.

[44]*Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1191 (D. Kan. 2006) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

> causation, but a three-month period, standing alone, is insufficient.[45]

Here, over four *years* passed between plaintiff's alleged protected activity and her termination. Under Tenth Circuit precedent, this is far from sufficient to establish the causation element of the prima facie case.

Plaintiff attempts to tie the termination decision to another leave period that plaintiff took in January 2003, five months before her termination. The Court rejects this argument, initially, because the Pretrial Order provides no notice that this is the basis for plaintiff's FMLA claim. The Pretrial Order explicitly ties the decision to terminate plaintiff to the FMLA leave she took in 1999.[46] Furthermore, even if the Court allowed plaintiff to now contend that her termination was in retaliation for her 2003 FMLA leave, this period also fails to sufficiently establish causation, as five months passed before she was terminated.

Plaintiff also suggests for the first time that the "adverse employment action" involved here is tied to plaintiff's harassment after returning from her 1999 FMLA leave. In so doing, plaintiff suggests that the temporal proximity should be measured from her FMLA leave to the time when she began to complain of harassment. This is entirely inconsistent with the allegations made in both the Complaint and the Pretrial Order. Plaintiff repeatedly has alleged in this case that her retaliation claim is based on her termination in May 2003.[47] Once again,

---

[45] *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original); *see also Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171–72 (10th Cir. 2006).

[46] *See infra* note 46.

[47] (Doc. 1 at 5 ("Defendant fired plaintiff in retaliation for her taking FMLA qualified leave of absences from work."); Doc. 1 at 6 ("In firing plaintiff for taking time off or seeking to take time off for a serious medical condition, defendant willfully violated the provisions of the FMLA and constitutes retaliation."); Doc. 65 at 4 ("Plaintiff's termination was in retaliation for exercising her right under the FMLA."); Doc. 65 at 7 ("the parties agree that, in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential

plaintiff attempts to make a new allegation that had not been made prior to the summary judgment briefing.[48]  "The laudable purpose of Fed. R. Civ. P. 16 is to avoid surprise, not foment it."[49]  The Court declines to consider a new allegation of retaliation that is not made in the Pretrial Order, which controls the boundaries of this litigation.[50]

Plaintiff suggests no other ground upon which to base the causation requirement in her case of FMLA retaliation.[51]  Actually, any inference that plaintiff's termination was due to retaliatory motive is undermined by the fact that Dinkel was not the City Manager at the time she took her 1999 FMLA leave, and that she returned from her FMLA leave and was retained for four years before her termination.  As such, the Court finds that even assuming plaintiff availed herself of the protections set forth in the FMLA when she took leave in 1999, there is no genuine issue of material fact that she was not terminated until four years later; therefore plaintiff is unable to establish that she was terminated because of her 1999 FMLA leave.

### 3.  Pretext

---

elements . . . . 4.  That plaintiff's exercise or attempt to exercise FMLA rights was a motivating factor in defendant's decision to fire her.")).

[48]Even if this argument could somehow be allowed as a claim that there was a pattern of retaliatory conduct starting soon after she returned from FMLA leave, it would not change the court's conclusion.  *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324 (10th Cir. 1996) (finding pattern of retaliatory conduct where plaintiff was "written up" after filing a complaint, which escalated into a demotion and ultimately terminated).  There is no evidence in the record about the timing of the events cited by plaintiff in relation to her request for FMLA leave.  *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231–32 (10th Cir. 2004).  Nor could these facts lead a reasonable jury to conclude that they establish a pattern of retaliatory conduct akin to that found in *Marx*.

[49]*Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002) (citing *Clark v. Penn. R.R.*, 328 F.2d 591, 594 (2d Cir. 1964)).

[50]*See id.* at 1215.

[51]Although not argued in response to the motion for summary judgment, plaintiff asserts in the record, the Pretrial Order, and the summary judgment briefs, a multitude of motivations for her termination, including: the fact that she turned in Phil Taylor in 1998, FMLA retaliation, and retaliation due to her political beliefs and disagreements with her superiors on City policy.

Assuming, *arguendo*, that plaintiff would be able to establish a *prima facie* case of FMLA retaliation, the Court finds no genuine issue of material fact on the issue of pretext. Defendants state that there was a legitimate, non-discriminatory reason for plaintiff's termination: insubordination for repeatedly failing to meet with Dinkel in May 2003.  The Court finds that defendants satisfy their burden of production of a legitimate, non-discriminatory reason for terminating plaintiff, and proceeds to determine if this act was a pretext for discrimination.

"'A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"[52] To be clear, plaintiff does not contest that she refused to attend the meetings with Dinkel and Doze.  Instead, plaintiff argues that because they had an agreement that she could have a "support person" present at those meetings, she could not be terminated for refusing to meet with them alone.  Plaintiff also argues that there were similarly situated male employees who were not terminated even when their conduct warranted it.

First, plaintiff argues that Dinkel intentionally requested a meeting with plaintiff when he knew that neither her husband nor Dr. Kohrs were available to attend as a support person. Plaintiff points to the fact that on Friday, May 9, 2003, she was not asked to go to Dinkel's office, despite requests on Thursday, May 8 and Monday, May 12.  Defendants maintain that they attempted to allow plaintiff to have her husband present once, but that he did not abide by certain conditions that had been placed on him.  Mr. Ney interjected himself in the conversation,

---

[52]*Mickelson v. New York Life Ins. Co.*, __F.3d__, 2006 WL 2468302, at *9 (10th Cir. Aug. 28, 2006) (quoting *Green v. New Mexico*, 420 F.3d 1189, 1192–93 (10th Cir. 2005) (internal quotations omitted)).

rather than silently observe as defendants had requested.  There is no evidence in the record to suggest that Dinkel's request for a meeting with plaintiff was done to essentially "trap" her into insubordination, except for plaintiff's affidavit.  Plaintiff's affidavit is insufficient, as it is not based on personal knowledge.[53]  Further, the fact that defendants provided plaintiff with multiple chances to track down a support person for the meeting cuts against an argument that they deliberately set out to create a situation where she would be disciplined.

Next, plaintiff argues that defendants were somehow required to "accommodate" plaintiff because Dr. Kohrs had recommended she have emotional support in her meetings with Dinkel and Doze.  According to Dr. Kohrs, this recommendation was for plaintiff's "legal protection" and for "emotional support."  Dr. Kohrs wrote a letter to Dinkel requesting that plaintiff not be harassed, yet he did not indicate that she was disabled.  Plaintiff does not assert a claim in this case for discrimination based on a disability.  When evaluating pretext, the Court looks to the facts as they appeared to the decisionmaker, Dinkel, at the time of his decision to terminate.[54] As such, the Court finds no genuine issue of *material* fact on this point.  Plaintiff does not controvert that Mr. Ney violated the conditions of any agreement that may have existed by attending a meeting and interjecting.  And there is no evidence that there was some sort of binding agreement with plaintiff that prohibited Dinkel or Doze from meeting with her alone.  Nor is there evidence in the record that plaintiff suffered a disability or that this "accommodation" was required by law or by some company policy.

---

[53]*See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1178 (10th Cir. 2006) (explaining that plaintiff's mere allegation without any supporting evidence does not raise a genuine issue of material fact); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003) (finding pretext where there was evidence that plaintiff's supervisors complained about her FMLA leave, including emails written by her supervisors).

[54]*E.g.*, *Campbell v. Meredith Corp.*, 260 F. Supp. 2d 1087, 1105–06 (D. Kan. 2003).

A plaintiff may show pretext by proving that similarly situated non-protected individuals were treated more favorably for committing comparable conduct.[55]  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[56]  To determine if employees are similarly situated, the Court should compare circumstances "such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[57]  While plaintiff does not argue that the treatment of similarly situated employees establishes pretext, she does address this argument in her equal protection claim.  The Court will briefly address this as a basis for establishing pretext.

Plaintiff attempts to compare her treatment to that of two other employees who were police officers: (1) Officer Israel Barrera, and (2) Officer Justin Baily.  Plaintiff reported to Chief Doze that on one occasion, Officer Barrera had been on duty when he locked himself in the back seat of a patrol car while having sexual relations with a citizen.  When Chief Doze spoke to Officer Barrera about the complaint, he denied the allegation.  Chief Doze investigated the incident and concluded that he could not substantiate it.[58]  Officer Baily had slashed the tires on a police vehicle.  When Dinkel and Doze discovered this, they contacted the KBI for a criminal investigation.  Officer Baily was suspended with pay for a time and then he was terminated.

Plaintiff argues that she was similarly situated to these officers because she was given the

---

[55]*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

[56]*Rivera v. City & County of Denver*, 365 F.3d 912, 922–23 (10th Cir. 2004) (quoting  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (internal quotation marks omitted)).

[57]*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

[58]Plaintiff also states that Officer Barrera was involved in acts of battery outside of work against his ex-wife and that he was involved in a drunk-driving accident.  There is no other evidence to substantiate these facts.

18

same work, and often would have their work imposed upon her unfairly.  Although no evidence

is pointed to by either party with respect to the different functions of clerks and police officers,

the Court is skeptical that these individuals have similar job duties.  Even if plaintiff was

required to do some of the same paperwork as these officers, it is beyond dispute that she was

not required to drive a police vehicle—which was a central feature of the misconduct by the

officers that plaintiff alleges was similar to her own infraction.

More importantly, neither of these officers committed acts in the presence of Dinkel or

Doze as plaintiff did, nor is there any evidence that they refused specific requests or demands by

Dinkel and/or Doze, yet were not terminated.  Further, Officer Baily was in fact terminated when

the allegations against him were substantiated.  The Court fails to see how the defendants'

treatment of these individuals gives rise to an inference of pretext for terminating plaintiff.

These individuals did not commit similar infractions, and there is no evidence that they

requested and were granted leave based on their non-protected status.  The Court finds no

genuine issue of material fact on the issue of similarly situated individuals.  The Court also finds

that plaintiff is unable to come forward with evidence to sustain her burden of proof on the

pretext issue that defendants' proffered reason for her termination is unworthy of belief.

Because plaintiff both fails to establish a *prima facie* case of FMLA retaliation and fails to come

forward with evidence of pretext, summary judgment is appropriate on this claim.

### B.  Section 1983 Claims

Under 42 U.S.C. section 1983, a state official may be held individually liable for actions

taken under color of state law.[59]  If a plaintiff recovers damages on a section 1983 individual-capacity claim, he may only execute the award against the official's personal assets.[60]   A plaintiff may also establish liability against a government official in an official-capacity suit.[61] To do so, the governmental entity itself must have been the "moving force" behind the alleged deprivation, so the entity's "policy or custom" must have contributed toward the constitutional violation.[62]  Alternatively, liability may be premised on a violation of plaintiff's constitutional rights by a state official with final policymaking authority within the governmental entity.[63] Plaintiff asserts claims under section 1983 for equal protection, procedural due process, and substantive due process.

### 1.  Equal Protection

Plaintiff argues that her termination violated her right to equal protection because she was treated differently than other male employees who were similarly situated.  As with FMLA retaliation claims, employment discrimination claims brought pursuant to 42 U.S.C. section 1983 are subject to the burden shifting framework of *McDonnell Douglas*.[64]  Without discussing the *prima facie* case required to establish gender discrimination, the parties argue whether plaintiff has come forward with evidence to establish pretext.

The Court finds that even if plaintiff is able to establish a *prima facie* case of gender

---

[59]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[60]*Id.*

[61]*See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978).

[62]*Id.*; *see also Graham*, 473 U.S. at 166.

[63]*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986); *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998).

[64]*See, e.g.*, *Randall v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995).

discrimination under section 1983, she is unable to meet her burden of proof with regard to

pretext.  As the Court has already concluded, there is no issue of material fact about whether

defendants' proffered reason for termination is not credible.  As a result, and for the same

reasons described above, the Court grants summary judgment on plaintiff's equal protection

claims against the individual defendants.

To the extent plaintiff asserts an official capacity claim against the City, summary

judgment is also appropriate.  A local government may not be held liable for tortious acts

committed by its employee if the employee committed no constitutional violation.[65]  In order to

establish liability, the government official must have committed a constitutional violation, and

the entity itself must have been the "moving force" behind the alleged deprivation, so the entity's

"policy or custom" must have contributed toward the constitutional violation."[66]  Plaintiff makes

no such allegation in either the Pretrial Order or her response brief.  Further, because the Court

has already found that summary judgment is warranted on the individual capacity claims, there

can be no liability on the part of the City.

## 2. Procedural Due Process

Procedural due process under the Fourteenth Amendment ensures that a state "will not

deprive a person of life, liberty or property unless fair procedures are used in making that

decision."[67]  In order to establish a claim for violation of her procedural due process rights,

---

[65]This rule is inapplicable, however, if the individual defendants are not liable on the grounds of qualified immunity.  *Myers*, 151 F.3d. at 1317.  "Municipalities enjoy no such shield."  *Id.* (internal quotation omitted).

[66]*Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 694–95; *Myers*, 151 F.3d at 1316.

[67]*Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1189 (10th Cir. 2006) (quoting *Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005)).

plaintiff must first show that she possessed a protected interest to which due process applied.[68]

"'In the context of a public employee . . . the touchstone is whether, under state law, the employee has a "legitimate claim of entitlement" in continued employment, as opposed to a "unilateral expectation" or "an abstract need or desire" for it.'"[69]  "Property interests are not created by the Constitution, but rather by independent sources such as state law.  Thus, constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials."[70]

Defendants argue that summary judgment is appropriate as a matter of law because plaintiff had no property interest in her continued employment with the City because she was an at-will employee.  Plaintiff argues that there is evidence that she was a "permanent employee" and that she could only be terminated for good cause.

Kansas follows the common law doctrine of employment at-will and applies the presumption that employees are at-will unless there is an express or implied contract that shows otherwise.[71]  "The existence of an implied contract depends on the intent of the parties, divined from the totality of the circumstances."[72]  Although this is normally a question for the jury, summary judgment is nevertheless appropriate "where the plaintiff presents only evidence of

---

[68]*Id.*

[69]*Hinsdale v. City of Liberal*, 19 Fed. App'x 749, 765 (10th Cir. 2001) (quoting *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))).

[70]*Id.* (internal quotations and citations omitted).

[71]*Anglemeyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir. 1995); *Johnson v. Nat'l Beef Packing Co.*, 551 P.2d 779, 781 (Kan. 1976).

[72]*Anglemeyer*, 58 F.3d at 537.

h[er] own unilateral expectations of continued employment."[73]

The Court agrees with defendants that there is no genuine issue of material fact over whether plaintiff was an at-will employee for the City, and thus, she has no property interest in continued employment with the City.  The only evidence in the record that plaintiff points to as evidence that she was not an at-will employee, is her own affidavit stating that former City officials told her she was a permanent employee and that other employees were asked to agree to employment at-will status.[74]  Plaintiff provides no testimony, or even names, of other employees who were provided with such contracts.

Assuming plaintiff was told she was a permanent employee, this argument fails for a multitude of reasons.  First, "permanent employment simply means to give a steady job of some permanence, as distinguished from a temporary job or temporary employment."[75]  It does not imply, as plaintiff suggests, any more than "an indefinite hiring terminable at the will of either party."[76]  Second, even if the former City Manager intended to create an implied employment contract with plaintiff, Kansas law precludes a city manager from doing so.[77]  Finally, even if the former City Manager was not precluded, the case law suggests that such an implied contract

---

[73]*Warren v. City of Junction City, Kan.*, 176 F. Supp. 2d 1118, 1126 (D. Kan. 2001); *see also Cragg v. City of Osawatomie*, 143 F.3d 1343, 1348 (10th Cir. 1998).

[74]In her response to defendants' statement of uncontroverted facts, plaintiff asserts without citation to the record that "according to [her] manual she was a permanent employee."  She does not extend this to the argument section of her brief.  Regardless, because plaintiff fails to support this contention with particularity to the record, the Court deems the statement in the Employee Manual, attached by defendants as Exhibit B to Dinkel's deposition testimony, as undisputed.

[75]*Johnson*, 551 P.2d at 782 (citing 53 Am. Jur. 2d Master and Servant § 32).

[76]*Warren.*, 176 F. Supp. 2d at 1126.

[77]*Id.* at 1125; *see also* K.S.A. § 12-1014; *Dehart v. City of Manhattan*, 942 F. Supp. 1395, 1399 (D. Kan. 1996); *Wiggins v. Hous. Auth. of Kansas City*, 916 P.2d 718, 722 (Kan. Ct. App. 1996); *Riddle v. City of Ottawa*, 764 P.2d 465 (Kan. Ct. App. 1988).

23

would have expired when she left office.[78]  Because plaintiff had no property interest in continued employment with the City as a matter of law, the Court grants summary judgment to defendants on this claim.

### 3.  Substantive Due Process

Plaintiff finally asserts a violation of her substantive due process rights under the Fourteenth Amendment.  The Tenth Circuit has questioned whether a property interest in employment is protected under substantive due process.

> Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution. We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process doctrine. Therefore, it is far from certain that Plaintiff's status as a lieutenant would be a fundamental property right protected by the substantive due process doctrine.[79]

Again, in determining whether a property interest in employment exists, the Court must look to state law.[80]  The Court has already concluded that plaintiff does not have a property interest in continued employment under Kansas law to allow her procedural due process claim to move forward.  Based on that analysis, there is no genuine issue of material fact that plaintiff lacks a property interest in continued City employment upon which she can base a claim that her right to substantive due process was violated.

---

[78]*Id.* (citing *Hall v. City of Wichita*, 223 P. 1109 (Kan. 1924)).

[79]*Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256–57 (10th Cir. 1998) (internal quotations and citations omitted); *see also Shrum v. City of Coweta*, 449 F.3d 1132 (10th Cir. 2006).

[80]*Clinger v. N.M. Highlands Univ., Bd. of Regents*, 215 F.3d 1162, 1167 (10th Cir. 2000) (citing *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000)).

Even if plaintiff did have a fundamental property right in continued employment, the Court finds that the City did not terminate that interest in an arbitrary or capricious manner, or without a rational basis.[81]  "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."[82]  For all of the reasons already set forth in the Court's retaliation discussion, defendants have set forth a legitimate, nondiscriminatory reason for plaintiff's discharge and plaintiff has failed to sustain her burden of pointing this Court to evidence that would support her contention that defendants' explanation is not to be believed.  For these reasons, summary judgment is granted to defendants on this claim as well.

### C.  State Law Claims

Because the Court grants summary judgment to defendants on the federal claims, it is authorized to decline supplemental jurisdiction over the remaining state law claims of whistleblower retaliation and defamation.[83]  Whether to exercise supplemental jurisdiction is committed to the court's sound discretion.[84]  28 U.S.C. section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial

---

[81]*See Hennigh*, 155 F.3d at 1257 (citing *Curtis v. Okla. City Pub. Schs. Bd. of Educ. Indep. Dist. No. 89*, 147 F.3d 1200, 1214–16 (10th Cir. 1998); *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 477 (10th Cir. 1978)).

[82]*Bishop v. Wood*, 426 U.S. 341, 350 (1976).

[83]28 U.S.C. § 1367(c)(3).

[84]*City of Chicago  v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

economy, convenience, fairness and comity.'"[85]

Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[86]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[87]  Plaintiff declines to point this Court to any compelling reasons that would justify not dismissing these state law claims.  Seeing no compelling reason not to dismiss the state law claims without prejudice, this Court declines to exercise supplemental jurisdiction.

Plaintiffs are free to pursue their claims in a Kansas court because even if the statute of limitations would otherwise have run, 28 U.S.C. section 1367(d) tolls the statute of limitations during the time the claim is pending and affords them at least 30 days from a current federal court dismissal to commence a new action in the state court.[88]  In this case, because discovery is complete, the Court conditions dismissal on the use of all discovery in any subsequently filed state court case.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 66) is **granted** as to all federal claims.

---

[85]*City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Commr's*, 365 F.3d 855 (10th Cir. 2004).

[86]*Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (collecting cases); *see also Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

[87]*Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[88]28 U.S.C. § 1367(d).  *Cf. Jinks v. Richland County, S.C.*, 538 U.S. 456, 466–67 (2003) ("no constitutional doubt arises from holding that [a] claim against . . . a political subdivision of a State—falls under the definition of 'any claim asserted under subsection (a).'").  Kansas's "saving statute," K.S.A. § 60-518, affords a plaintiff six months to commence a new action if a previous timely action failed "otherwise than upon the merits."  Examples of such failures include dismissal without prejudice.  *See Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989).  If applicable, this time frame controls over the 30-day tolling period in 28 U.S.C. § 1367(d).

**IT IS FURTHER ORDERED BY THE COURT** that because the Court declines to exercise supplemental jurisdiction in this case, plaintiff's state law claims are dismissed without prejudice.

**IT IS SO ORDERED**.

Dated this 22ⁿᵈ day of February 2007.

 S/ Julie A. Robinson

Julie A. Robinson

United States District Judge